## EISERT v. ALLSTATE INSURANCE CO.

Civil and Criminal Court of Record, Pinellas County.

May 6, 1957.

B. M. Skelton and Robert H. Willis, both of St. Petersburg, for plaintiff.

Billy L. Rowe, Mann, Harrison, Roney, Mann & Masterson, St. Petersburg, for defendant.

JOSEPH P. McNULTY, Judge.

This cause came on this day to be heard upon an order directing a pre-trial conference to determine the issues to be tried at the trial hereof. The plaintiff (hereafter "the insured") orally moved for permission to introduce evidence in support of certain contentions hereinafter more fully appearing. The defendant (hereafter "the company") appeared by counsel.

This case involves claims by the insured on a collision policy issued by the company, which admits liability for $195.88, the actual cost of repairs to the damaged automobile, and for $35 under a medical payment rider.

The insured raises two additional, and unique, claims under the policy for— (1) Loss of use of the automobile by the insured in the sum of $45, and (2) Loss, in depreciation of the automobile, even after repairs, by reason of the loss in actual market value of the automobile because of its new status, after the collision, of being a car which has been in a wreck.

The following provisions of the policy are the material portions—

"1. Coverage D. *Collision and Upset Insurance.*
To pay for loss to the owned automobile caused by its collision with another object or by its upset, less the deductible amount stated on the Supplement Page.

"2. *Definitions.*
11. "Loss", wherever used with respect to Coverages D and H, means each direct and accidental loss of or damage to the automobile.

"3. *Limits and liability*: * * * For coverages D and H, the limit of liability is the actual cash value of the automobile, or if the loss is of a part, its actual cash value, at the time of the loss, but not to exceed what it would then cost to repair or replace the automobile or part with other of like kind and quality, less depreciation."

In support of her first additional claim, for loss of use, the insured relies on American Standard County Mut. Ins. Co. v. Barbee (Ct. of Civ. Appeals, Texas), 262 S.W. 2d 122, in which the Texas court, by dictum, stated that in a proper case an insured may recover under a collision policy for loss of use during the period while the car is being repaired. No mention is made of the terms of the policy in that case.

In the instant case there is no language in the policy which would justify such a ruling. Coverage D, as set forth above, is for "loss of or damage *to the automobile*" and clearly contemplates only loss pertaining to the automobile and not collateral loss to its owner. The insured's first additional claim is not well founded, and no evidence will be permitted at the trial in support thereof.

With respect to the insured's second additional claim, depreciation of the automobile after repairs, the insured relies heavily on two decisions by the Mississippi Supreme Court, Potomac Ins. Co. v. Wilkinson, 57 So. 2d 158, and Motors Ins. Corp. v. Smith, 67 So. 2d 294. It was stated in the first case (and reasserted in the second) at 57 So. 2d, page 160, that—"Instructions predicated upon partial loss should submit as a basis of estimate the cost of all repairs necessary and adequate to restore its former function and efficiency. If such repairs can restore also its market value as of the date of the damage, such cost of repair is the measure of liability. If, despite such repairs, there yet remains a loss in actual market value, estimated as of the collision date, such deficiency is to be added to the cost of the repairs. It is not the value to the owner which controls, but the value to those who constitute the market in used cars."

It appears to this court that such a statement is sound law as it applies to the language of the policy in the instant case. In the first place, the three applicable portions of the policy, as set out above, clearly contemplate loss "direct" to the automobile, that is, loss pertaining to the automobile itself and certainly depreciation to the automobile as a direct result of an accident is a loss *to the automobile*.

Furthermore, it appears to the court that an even stronger reason arises from the language of the policy, under "limits and liability", which states—". . . the limit of liability is the *actual cash value* of the automobile, *or* if the loss is of a part, its *actual cash value*, at the time of loss, but not to exceed what it would then cost to repair or replace the automobile or part with other of like kind and quality, less depreciation." It is apparent that such a limitation is concerned with two types of losses, total loss and partial loss. It must be assumed that the parties contemplated the same *degree* of coverage, whether the loss be whole or partial—although a lesser amount of money may be payable for partial loss. It cannot be deduced from the language of the policy that the parties, in the same sentence of the policy, contemplated a *lesser degree* of coverage in the case of a partial loss than the degree of coverage contemplated for a total loss.

The very purpose of collision insurance is to render an insured reasonably whole after he has sustained loss by virtue of an accident and regardless of any liability against third party tortfeasors. The insured must be made whole, equally, whether his loss be total or partial. The only possible way of doing so, under a collision policy such as in the instant case, is by computing such

loss from a common base. In this case, the language of the policy clearly contemplates "actual cash value", at the time of loss. Thus, if the company's liability for a total loss is the actual cash value of the automobile at the time of loss, then the liability for a partial loss must also be the actual cash value at the time of the loss, but, in the latter case, less the actual cash value of the automobile after repairs, if such a difference in cash value exists. In other words, the actual cash value at the time of the loss, in both cases, is the basis from which the company's liability is determined—in the former it is the sole limit but in the latter it is the starting point from which liability is computed.

In my opinion the insured's second additional claim is well founded and she may introduce at the trial such competent evidence as she may deem advisable in support thereof.